UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

CHRISTOPHER FRANKE,
Individually and on behalf of others similarly situated,

      Plaintiff,

 -vs-                                          Case No. 12-1374
                                                Hon. Robert J. Jonker

FINANCIAL LEAD SERVICES, LLC,
*et al.*

      Defendants.

## MOTION FOR ATTORNEY'S FEES AND COSTS INCURRED IN LITIGATION

For the reasons set forth in the accompanying brief in support, Christopher Franke requests that the Court grant this petition for attorney's fees in the amount of $115,000.00, costs and litigation expenses of $13,918.43, and $46,585.00 in class notice and administration costs.

                                            Respectfully Submitted,

                                            By:  s/ Ian B. Lyngklip
                                            Ian B. Lyngklip (P-47173)
                                            LYNGKLIP & ASSOCIATES
                                            CONSUMER LAW CENTER, PLC
                                            Attorney For Christopher Franke
                                            24500 Northwestern Highway, Ste. 206
                                            Southfield, MI 48075
                                            (248) 208-8864
                                            Ian@MichiganConsumerLaw.Com

Dated: April 30, 2015

UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

CHRISTOPHER FRANKE,
Individually and on behalf of others similarly situated,

    Plaintiff,

 -vs-                                        Case No. 12-1374
                                                    Hon. Robert J. Jonker

FINANCIAL LEAD SERVICES, LLC,
*et al.*

    Defendants.

**BRIEF IN SUPPORT OF
MOTION FOR ATTORNEY'S FEES AND COSTS INCURRED IN LITIGATION**

**Introduction and Summary of the Case**

    This is a class action brought on behalf of a class of consumers who allege that Defendants Financial Lead Services, LLC, ("FLS") Complete Debt Settlement LLC, Dean Sundrla, and Angela Cole (collectively, "Defendants") violated provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA").  In specific, Mr. Franke alleged that Financial Lead Services used his consumer report,  as well as those of class members, to sell debt consolidation services via a mass marketing mailer.

    This case involved substantial discovery work to identify the defendants, whose true name, address, or phone number did not appear anywhere on the marketing letter.  Additionally, it required Class Counsel to identify the re-seller of the consumer report data and establish that entity as a credit reporting agency.   The case was aggressively litigated by Mr. Franke as well as by the multiple Defendants throughout a period that exceeded two years.  It involved extensive written  discovery, multiple deposition, and  motion practice.  It was only resolved after extensive discovery, legal

Page 1

challenges and after two full days of mediation with an experienced mediator. Finally, it included work involved in coming to terms of the class settlement and ultimately bringing the case to its ultimate conclusion through the approval process. The work that Class Counsel performed began before this case was filed, continues to this day, and will extend beyond final approval until the last dollar is distributed to the class members. To the knowledge of Class Counsel, this case represents the first in which a debt settlement company has been successfully sued in a class over its practices of using consumer reports to market their services.[1] Plaintiffs' counsel breaks new ground in this field, and Class Counsel carried substantial risk over the course of this litigation.

As part of the final approval of the parties' Settlement Agreement and Release (the "Settlement") (R. 107), Class Counsel respectfully asks this Court to approve an award of attorneys' fees and costs. Section 4.a of the Settlement Agreement provides for $115,000.00 of the settlement fund be allocated to attorney fees, subject to Court approval. (R. 107 PgID 2100.) The section further provides that the settlement fund will pay attorney's litigation costs incurred in prosecuting the case as approved by the Court. *Id.*

The class notice informed all Class Members that Class Counsel would request payment of $115,000 in attorney fees or approximately 27.5% of the value of the class recovery. (R. 118, Sec. R.) Not a single class member objected to the class settlement and only one individual opted out. This is evidence that the requested award is supported by the Class Members and is reasonable under the circumstances of this case.

---

[1] In the related case, *Franke v Advantage Direct 365, Corp, et.al*, E.D. Mich. Case No. 2:12-CV-11305, Mr. Franke obtained class certification in a Rule 23(b)(2) class for injunctive relief against the print house, Advantage Direct 365 Corp., that prepared the marketing mailer for FLS. (Final Approval Order January 14, 2014.).

The amount sought in fees is a substantial reduction in the amount actually spent on fees by Class Counsel which was well in excess of the requested $115,000.[2] The requested attorneys' fees and costs are supported by well-settled Sixth Circuit authority. For all the reasons set forth herein, the Court should grant Class Counsel's motion for attorneys' fees and costs incurred in the prosecution of this matter.

## Law & Argument

**I.     The Court should award attorneys' fees from the settlement fund to Class Counsel.**

Under the common fund doctrine, Class Counsel may request an award of reasonable attorneys' fees and costs to be paid from the Settlement Fund. Federal courts have consistently "recognized that ... a lawyer who recovers a common fund for the benefit of persons other than ... his [or her] client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common-fund doctrine "avoid[s] the unjust enrichment of those who benefit from the fund that is created ... by the litigation and who otherwise would bear none of the litigation costs." *Court Awarded Attorney Fees, 3d Cir. Task Force*, 108 F.R.D. 237, 250 (1985). The award of reasonable attorneys' fees need only be "reasonable under the circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005); *see also Boeing Co. v. Van Gemert*, 444 U.S. at 478.

In this case, all Settlement Class Members will benefit from the creation of the Settlement Fund, and an award to their counsel for their efforts in establishing fund for their benefit is

---

[2] As set forth in the attached Declaration in Support of Time Records, Class Counsel spent a total of 611.19 hours on the case for a total billable amount of $192,642.00.

appropriate. As set forth below, the requested fee satisfies the applicable test for such an award, and a cross-check against the *Lodestar* establishes that the requested fee is reasonable.

      A.    **The Court should award those fees based upon the percentage-of-the-fund method.**

Where, as here, a class action settlement provides for the creation of a common fund for the benefit of class members, the Court has discretion to award attorneys' fees under either the percentage-of-the-fund method or the *Lodestar*/multiplier method. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). However, in the Sixth Circuit, the percentage of the fund method is preferred in common fund cases. *Rawlings*, *id*; *see also Physicians of Winter Haven LLC, supra*, 2012 WL 406966, *3 ("[t]he percentage of the fund approach is the preferred method in cases where the attorneys' fees are to be paid directly from the common fund.").

As the Sixth Circuit explained in *Rawlings*, "[t]he percentage of fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Rawlings,* 9 F.3d at 516.

Courts considering such motions should consider "the range of fee awards out of common funds of comparable size." *Vizcaino*, 290 F.3d at 1050. As noted by the Northern District of Ohio, "[t]hroughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%-50%." *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 937 (N.D. Ohio 2003). *See also, Manners v. Am. Gen. Life Ins. Co., CIV.A. 3-98-0266*, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) (collecting cases, including *In re Cincinnati Microwave Inc. Sec. Litig.,* Consolidated Master File No. C-1-95-905, Order and Final Judgment (W.D. Ohio Mar. 21, 1997) (awarding 30%);

*Telectronics,* slip op. at 71 (awarding 28%); *Adams v. Standard Knitting Mills, Inc*., [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) 96,377 (E .D. Tenn. Jan. 6, 1978) (35.8% award)).

In this case, approximately 27.5% of the fund results in a $115,000 attorney fee payment and is fair and appropriate. This was the amount agreed upon in the Class Settlement Agreement and amount that this Court viewed to be fair compensation as articulated in the Preliminary Approval Order. (R. 116, PgID 2425.) That percentage amount and figure were both set forth in the Class Notice as the amount Class Counsel would be requesting. Moreover, there is no windfall for Class Counsel who actually devoted many more than $115,000 billable time on this case.[3] Class Counsel was willing to agree to this reduction following a due diligence investigation and concluding that defendants had limited financial capability. Additionally, Plaintiff and Class Counsel had a strong desire to obtain a meaningful recovery for Class Members. Thus, awarding fees based a percentage of fund method actually results in a substantial reduction in payment of Class Counsel's reasonable attorney fees.

Additionally, Class Counsel's request for 27.5% of the settlement fund is march step in line with awards in other cases. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532-33 (E.D. Mich. 2003), *citing F & M Distribs. Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 11090, at *8-10 (awarding a 30% fee award after observing that "[w]hen using a percentage-of-the-fund approach to calculate attorneys' fees, twenty-five percent has traditionally been the benchmark standard, 'with the ordinary range for attorney's fees between 20-30%.'"). Class Members received notice that Class

---

[3] As set forth below in section I(c) below, the total amount of actual fees is roughly $190,000.00.

Counsel would seek an award based on a percentage of the Settlement Fund, and not a single Class Member objected to this approach.

The Sixth Circuit established six factors to be considered by the Court "in determining whether the amount of an award is reasonable." *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir.1974); *Rawlings,* 9 F.3d at 516-17; *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). As demonstrated below, a consideration of each of the factors establishes the reasonableness of Class request for approximately 27.5% of settlement fund based on these factors and compared to awards in similar cases.

### 1. The Value of the Benefit Rendered for the Class.

In this case, each member of the 8,000 member class will received approximately a $30.00 cash benefit. This is the first cash benefit for class members in this kind of impermissible access case (use in marketing debt consolidation services). Moreover, Class Members did not have to take any steps to be entitled to the cash benefit such as fill out a claim form or opt in that is required in so many class cases. A Class Member is automatically entitled to the payment unless he or she opts out. And in this case, only one person did. Moreover, all funds are distributed and do not revert back to the Defendant. Uncashed checks will be placed in a *Cy Pres* fund, ultimately distributed to the Electronic Privacy Information Center. (Settlement Agreement R. 107.2 PgID 2102).

In this case, the value delivered to the class fee supports Class Counsel's request and the Court should approve the requested fees.

### 2. Society's stake in rewarding attorneys who produce such benefits.

As a general rule, class actions serve the general public's interest "by enabling ... claimants

to pool their claims and resources" to "achieve a result they could not obtain alone." *In re Telectronics Pacing Systems, Inc.*, 137 F.Supp.2d 1029, 1043 (S.D. Ohio 2001). In this case specifically, Class Counsel sought to vindicate the privacy rights of consumers who were unlikely even to know their claims were actionable. Moreover, the identities of the defendants could not have even be known without the substantial investigative efforts of the Class Counsel. Thus, Class Counsel's efforts serve precisely the kind of important societal goals envisioned by a consumer class action practice.

In this case, Class Counsel's effort furthered an important societal interest in the privacy of consumer reports. This factor supports Class Counsel's request and the Court should approve the requested fees.

### 3. Whether the services were undertaken on a contingent fee basis.

The burden borne by class counsel in taking on the litigation is another relevant factor that justifies Class Counsel's requested award of fees. "Several courts consider the risk of non-recovery the most important factor in the fee determination." *Cardinal, supra, at 766, citing Bristol*, 361 F.Supp.2d at 233-34; *Union Carbide Corp.*, 724 F.Supp. at 164 ("[C]ontingent fee risk is the single most important factor in awarding a multiplier"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). As the accompanying declaration of Class Counsel attests, Class Counsel have labored on this case for over two years on a pure contingency basis, and will continue to do so even after final approval. They advanced all out-of-pocket costs, including expert costs, deposition costs, and mediation costs. All told, Class Counsel collectively incurred $13,918.43 unreimbursed, out-of-pocket costs, all of which were advanced with no promise of repayment.

In large and complex cases like this one, the contingency risk "'is very real.'" *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134 (D. N.J. 2002). The risk is only "heightened when Plaintiffs' counsel press to achieve the very best result for their clients" by devoting more and more time, energy, and resources to a case. *Id.* Courts recognize that "the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." *Garner,* 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) at *2 (*citing Vizcaino,* 290 F.3d at 1050). "Such a practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Kanawi*, 2011 WL 782244 (N.D. Cal. Mar. 1, 2011) at *2; *see In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994) ("premium[s]" in contingency-fee cases are "a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis").

In this case, the contingency nature of the fee supports Class Counsel's request and the Court should approve the requested fees.

### 4. The value of the services on an hourly basis.

As described below, Class Counsel spent more than 600 hours prosecuting this litigation and expect to spend many additional hours after final approval. At Class Counsel's customary rate, these fees total more than $190,000.00. (See section I(c) below). Based on the inclusion of reasonable estimates for future work associated with this litigation, Class Counsel's request would results in no *Lodestar* multiplier. Rather, as noted above, Class Counsel agreed to accept far less than their hourly

rate so that the Class Members could obtain a meaningful recovery. Class Counsel's request is reasonable.

In this case, the contingency nature of the fee supports Class Counsel's request and the Court should approve the requested fees.

### 5. The complexity of the litigation.

To achieve the result they accomplished for the Settlement Class, Class Counsel took on and overcame a series of very significant risks. To begin with, it started with establishing who was responsible for pulling Plaintiff Christopher Franke's consumer report. This case alleges that defendants pulled the credit reports of thousands of consumers for the impermissible purpose of marketing debt consolidation services. The marketing campaign was done *via* a mass mailer that did not identify any of the defendants to this action. Thus, the first hurdle was ascertaining the identity of the Defendants and the credit reporting agency that provided the lists to FLS.

Class counsel was only able to identify FLS through investigative work performed through related litigation, *Franke v Advantage*, and the remainder of the Defendants through extensive first and third party discovery in this case.

Moreover, the factual and legal hurdles were great. The FCRA is not merely a "complex statutory scheme," but one that has been said to contain "almost incomprehensibly complex provisions" and "esoteric strictures." See *Burrell v. DFS Services*, LLC, 753 F. Supp. 2d 438, 2010 U.S. Dist. LEXIS 128214, 2010 WL 4926704, *1 (D. N.J. December 7, 2010); see also *Narog v. Certegy Check Servs.*, 759 F. Supp. 2d 1189, 1194-1195 (N.D. Cal. 2011). Adding to this complexity, Plaintiff was operating in an area without the benefit of a large body of case law ruling

that consumer lists like those at issue, are in fact consumer reports within the meaning of the FCRA, 15 U.S.C. § 1681a(d). This is a multi-part test, which in turn, depends on identifying who provided the list and establishing that entity as a credit reporting agency. *Id.* A credit reporting agency is defined on its own terms. 15 U.S.C. § 1681a(f).

Next, recovery in this class case depended on establishing that defendants' violation was willful. This action was filed to obtain redress for the privacy violations to Mr. Franke and the class members for accessing their private financial information. They sought statutory, punitive damages along with costs and attorney fees. However, in order to recover these damages, a plaintiff must establish that the defendants' conduct was "willful." 15 U.S.C. § 1681n. [4] Without establishing a willful violation, Mr. Franke recovers nothing for himself or for the class. The task was a challenging one, requiring Plaintiff to face Defendant Dean Sundrla's[5] claim that he did not understand that the list was a consumer report or that it had been produced by a consumer reporting agency. Plaintiff examined Defendants' policies, practices and underlying contracts with the list provider and deposed Mr. Sundrla. Because the entire case hinged on establishing the willfulness of the violation, Plaintiff also hired Consumer Mortgage Financing Expert Pava Lehrer. With over 13 years in the industry, she would be able to knowledgeably testify that FICO scores and debt load information included in the consumer list is used the credit approval process and that Mr. Sundrla,

---

[4] For negligent violations, a plaintiff is limited to actual damages. 15 U.S.C. § 1681a(d). Thus, absent a showing of willful violations, it would be practically impossible to obtain a class recovery.

[5] Dean Sundrla was the principal officer of both Financial Lead Services, and Complete Debt Settlement.

as a former mortgage loan originator, knew or should have known this was credit information. Shortly after the expert disclosure on May 13, 2014 (R. 94), the parties held their second mediation session. This was a full day session culminating in the class settlement in July 2014. Following that, Class Counsel expended time in preparing the final settlement agreement, the Joint Motion for Class Certification and related documents to secure approval.

In this case, the complexity of the subject matter and discovery supports Class Counsel's request, and the Court should approve the requested fees.

### 6. The professional skill and standing of the attorneys involved.

In this case, Class Counsel and his firm enjoy an excellent reputation among the bar, their piers, public interest organizations, and government alike.

Few attorneys regularly handle consumer law claims in Michigan. Fewer still handle these claims in federal court with any degree of regularity. The cohort of regular filers who maintain offices in this district and practice in the area is less than a dozen.

Class Counsel and the attorneys of his firm maintain a highly specialized practice, limited exclusively to consumer protection through litigation under the many federal and state consumer protection statutes (R.107-5).  The Declaration of Ian Lyngklip setting forth his training, background, experience and skill in this area.) Class Counsel's history includes a long history of providing training to attorneys in order to attract additional practitioners to this area of law. Additionally, Class Counsel has over the years conducted training for opposing counsel, judges, and for Members of the Michigan House of Representatives. Class Counsel has appeared by invitation before the Federal Trade Commission and the Consumer Financial Protection Bureau

to participate in industry round tables. In short, the reputation of Class Counsel before his peers and the legal community amply support the requested rate.

Likewise, Julie Petrik, a twenty year attorney, has a specialized practice devoted to exclusively to the protection of consumers through litigation under federal and state consumer protection statutes. She has litigated numerous individual and consumer class cases in federal courts across the nation and trained other attorneys. (Petrik Declaration attached as Exhibit 3.) In her first period as an attorney, she litigated labor and employment matters. She later was awarded a gubernatorial appointment to the Employment Security Board of Review where she adjudicated unemployment compensation claims.

Class Counsel has appeared numerous times before this Court and believes that this Court is familiar with the expertise of his office. Class Counsel also believes that this Court is generally familiar with the rates charged by partners in law firms within the Western District of Michigan, with approximately 20 years of experience, and 15 years of practicing in federal courts, here and throughout the country.

The accompanying fee survey of consumer lawyers reveals that the rate requested by Plaintiff's counsel ($400) is well within the range for practitioners in the state of Michigan in this practice area with similar credentials. (median and mean rate of approximately $300 – 75th percentile – $350 – 95th percentile $515) (Exhibit 4, p. 10). At the same time, the requested rate of $400 per hours is consistent with that of all consumer attorneys who fall within the 95th percentile of their practice area; those attorneys command $410 per hour. (Exhibit 4, p 11.) Given Class Counsel's reputation, experience, and national recognition as an authoritative consumer

attorney places him within the 95th percentile of his practice area, and consequently within the range of what this attorney can demand in the market place.

Throughout the litigation of this case, Class Counsel has demonstrated skill commensurate with his reputation and qualifications. As such, this factor supports the requested fee, and the Court should approve that request.

> **B.** **The Court may use Lodestar method as a "cross check" on the requested percentage.**

This Court may use the *Lodestar*/multiplier method as either an independent basis for fees (*Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir.1996)), or as a cross-check against the requested percentage attorney fees (see e.g. *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5-6 (S.D.Ohio Dec.21, 2012); *Michel v. WM Healthcare Solutions, Inc.*, 2014 WL 497031 (S.D.Ohio 2014)). The starting point for this calculation of reasonable attorney's fees award "should be the determination of the fee applicant's '*Lodestar*,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his [or her] court-ascertained reasonable hourly rate." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir.2000)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)).

Once the district court determines the fee applicant's lodestar, the court must consider other factors relevant to the reasonableness of any fee award, such as: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time

limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n. 3, 103 S.Ct. at 1937 n. 3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974)). Most of these factors were discussed above in relation to the percent of fund discussion and do not bear repeating.

### 1. Hours expended in prosecution of the case by Class Counsel.

A calculation of the number of hours reasonably expended can involve consideration of three issues, (1) whether the lawyer actually worked the number of hours claimed, (2) whether the work performed was sufficiently related to the points on which the plaintiff prevailed, and (3) whether the attorney used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel. See *Coulter v. State of Tennessee*, 805 F.2d 146, 150-51 (6th Cir. 1986).

Class Counsel has expended in excess of 600 litigating this case.[6] (Exhibit 2). This work spanned over more than two years and was all necessary, reasonably related to the file and directed at moving the matter through the legal system. *Id.*

### 2. Class Counsel's requested hourly rate is reasonable in light of his skill, expertise and professional standing.

The party seeking an award of fees bears the burden of demonstrating that the request is

---

[6] Class Counsel will submit their detailed billing records should this Court so request. They have not included them at this time as the requested fee award is justified under the percent of fund method and editing and redacting confidential items from those records spanning more than two years would require significant attorney time.

Page 14

reasonable. See *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990). To determine a reasonable hourly rate for attorney fees, the courts look to the prevailing market rate for similar services of local attorneys with comparable skill, experience, and reputation. *Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). According to the Sixth Circuit:

> In determining what the level of compensation for each category of service should be, the court should look to the fair market value of the services provided. In most communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney. For those attorneys who have no private practice, the rates customarily charged in the community for similar services can be looked to for guidance.
>
> Focusing on the fair market value of the attorney's services will best fulfill the purposes of the Fees Awards Act, by providing adequate compensation to attract qualified and competent attorneys without affording any windfall to those who undertake such representation. The entire purpose of the statutes was to ensure that the representation of important national concerns would not depend upon the charitable instincts of a few generous attorneys.

*Northcross v. Bd. of Educ.*, 611 F.2d 624, 638 (6th Cir. 1979).

In order to attract attorneys to represent plaintiffs in contingent, fee-shifting cases enforcing laws which protect the public as Congress intended – civil rights, environmental and consumer – they must be adequately compensated. As stated by the Third Circuit:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3rd Cir. 1988). "Congress has relied on such plaintiffs to act as private attorneys general." Id., at 1450 n.13. See also, *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991).

Attorney fees are central to the FCRA's enforcement which chiefly relies on consumers to act as private attorney generals. As the Tenth Circuit stated, "The value of an attorney's services is not only measured by the amount of the recovery to the plaintiff, but also the non-monetary benefit accruing to others, in this case the public at large from this successful vindication of a national policy." *Fleet Inv. Co. V Rogers,* 620 F2d. 792 (10th Cir. 1980). Thus, in one FCRA class settlement, the court determined that class counsel was entitled to a 1.5 lodestar multiplier. *Perry v Fleetboston Fin. Corp.,* 229 F.R.D. 105 (E.D. Pa 2005). Additionally, *see Holman v. Experian,* 2014 WL 7186207 (N.D. Cal. Dec. 12, 2014), a recent FCRA class action settlement in which the court approved hourly attorney rates of $750 -$450 and $150 paralegal rate.

As set forth above (Section I(a)(6)), Class Counsel's skill, professional reputation, and experience amply support the requested rate. This factor, again, supports Class Counsel's request for fees, and the Court should approve the request.

## C. The total *Lodestar* calculation yields an award of an attorney's fee in a reasonable amount in light of the litigation.

The total lodestar calculation for Class Counsel and his firm to date establish the following lodestar fee: 611.19 hours for a total requested fee of $192,642.00 establishing a blended rate of $315.2/hour. Exhibit 2. Thus, Class Counsel's requested an award of an attorney's fee in the amount of $115,000.00 would yield a blended rate of only $188.15/hour. As such, the requested amount is well below Class Counsel's ordinary rate, and well within the standards for counsel in the Western District. For this reason, Class Counsel requests that the Court award $115,000 in fees as negotiated in this case.

**II.     The Court should award class counsel's litigation expenses and costs of litigation.**

The Plaintiff is entitled to recover additional non-taxable costs as a component of the "Attorney Fee" award under the FCRA.  *Grove v. Wells Fargo Financial California, Inc.,* 606 F.3d 577 (9th Cir. 2010). Courts regularly award reimbursement of expenses that were necessarily incurred in successfully prosecuted class actions. *Holman*, *Perry*. In prosecuting this case, Class Counsel have, to date, advanced litigation costs and expenses of $13,922.43. ( Exhibit 2).  Under the terms of the Settlement Agreement, Attorney litigation costs are to be paid from the Settlement Fund as approved by the Court.  (R. 107.2 PgID 2100.)

These costs and expenses are detailed in the summaries attached to the Declarations of Class Counsel. (Exhibit 2).  Class Counsel respectfully submit that the costs and expenses were reasonable and necessary to obtain the Settlement Agreement and request an award.  In brief, these costs include filing fee, service fees, deposition transcripts, travel expenses and Mediator Drew's fees.  Additionally, as noted above, Class Counsel hired Pava Leyrer to prepare a report on the critical issue of willfulness.

**III.    The Court should award costs for notice to the class and administration of the settlement fund.**

The Settlement Agreement in this case provided for costs of class notice and administration to be deducted from the class settlement fund.  Class Counsel engaged the services of McGladrey, a well-known firm providing settlement and administration services for class actions, to administer the fund for an estimated cost of $46,585.00.   In the course of attempting to locate class members, notify them of the class, and administer the fund, McGladrey  has

- established a web site,

- per National Change of Address searches.

- provided first class mailed notice of the action

- attempted to locate recipients of undeliverable notices (30% in excess of the anticipated amount), and

- redeliver to those located.

Exhibit 6. Having performed those services, Class Counsel requests that the Court grant $46,585 in costs of administration to McGladrey, with an additional $4,086.35 representing unforseen expenses paid from the remaining fund after checks expire.

## Conclusion

This was not an easy case - indeed, it was a difficult and risky one in ground breaking territory. In this case, Plaintiff's attorney has expended more than 600 hours in bringing this case forward to a conclusion – not including time for preparation of this brief or anticipated time at the attorney fee hearing – to a favorable resolution for his client. For the reasons set forth above, Mr. Franke requests that the Court grant the follow fees and costs to be deducted from settlement fund before distribution to the class.

Attorney's Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $115,000.00
Costs and Expenses of Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $13,918.43
Class Administration  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $46,585.00

                Respectfully Submitted,


                By:  <u>s/ Ian B. Lyngklip</u>
                Ian B. Lyngklip (P-47173)
                LYNGKLIP & ASSOCIATES
                CONSUMER LAW CENTER, PLC
                Attorney For Christopher Franke
                24500 Northwestern Highway, Ste. 206
                Southfield, MI 48075
                (248) 208-8864
Dated: April 30, 2015        Ian@MichiganConsumerLaw.Com